UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | File No. 20-cr-95(1) (ECT/HB) |
| Plaintiff, | File No. 20-cr-123(1) (ECT/HB) |
| v. | |
| Salvador Nunez-Hernandez, | **OPINION AND ORDER** |
| Defendant. | |

Defendant Salvador Nunez-Hernandez has filed a *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, based on claims that he received ineffective assistance of counsel. ECF No. 100.[1] Nunez-Hernandez argues that his counsel (1) failed to challenge the constitutionality of the reentry of a removed alien statute, 8 U.S.C. § 1326; and (2) failed to explain to Nunez-Hernandez that he was pleading guilty to a reentry of a removed alien charge. ECF No. 100-1 at 7–13. Nunez-Hernandez's motion will be denied because he fails to show that his counsel's performance was deficient.

I

Salvador Nunez-Hernandez is a Mexican citizen with no legal status in the United States. PSR [ECF No. 66] at 2, 4. He has been removed from the United States, after illegally entering the country, on three occasions. ECF No. 59 at 2. Before his last deportation, Nunez-Hernandez had sustained a felony conviction for possession with the intent to distribute cocaine in the United States District Court for the Western District of

---

[1]   Docket entries refer to those filed in File No. 20-cr-95(1) unless otherwise specified.

Washington, for which he received a sentence of 70 months' imprisonment. *Id.* Nunez-Hernandez once again illegally entered the United States on or before March 3, 2020. *Id.* On March 3, 2020, following his arrest in St. Paul, Minnesota, for distributing methamphetamine, Nunez-Hernandez was identified by immigration officials at the Anoka County Jail. *Id.* at 2–3.

In May 2020, the grand jury returned an indictment that charged Nunez-Hernandez with reentry of a removed alien (Count 1). ECF No. 8. In June 2020, a second indictment was returned, charging Nunez-Hernandez with two counts of distribution of methamphetamine (Counts 1 and 2), and one count of possession with the intent to distribute methamphetamine (Count 3). *See United States v. Salvador Nunez-Hernandez*, No. 20-cr-123, ECF No. 1.

Nunez-Hernandez filed several pretrial motions. He moved for disclosure of evidence under Rule 404(b), ECF No. 26, disclosure of *Brady* material, ECF No. 27, discovery and inspection, ECF No. 28, early disclosure of evidence under the Jencks Act, ECF No. 29, retention of law enforcement agents' rough notes, ECF No. 30, disclosure of expert testimony, ECF No. 31, suppression of evidence, ECF No. 32, and suppression of statements, ECF No. 33. He did not, however, move to dismiss the reentry charge on the ground that 8 U.S.C. § 1326 is unconstitutional. Before any of these motions were decided, Nunez-Hernandez filed a letter withdrawing all his pretrial motions, stating the Parties had reached a global resolution with respect to both pending indictments, and would contact chambers to schedule a change of plea hearing. ECF No. 55.

On January 5, 2021, Nunez-Hernandez pleaded guilty to Count 1 of each indictment—reentry of a removed alien in violation of 8 U.S.C. §§ 1326(a), 1326(b)(1), and 6 U.S.C. §§ 202, 557, and distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). ECF Nos. 58, 59. As part of his plea agreement, Nunez-Hernandez waived the right to appeal both counts of conviction "on any ground" as long as the term of imprisonment did not exceed 121 months. ECF No. 59 ¶ 13. On April 27, 2021, Nunez-Hernandez was sentenced to 120 months' imprisonment for the reentry of a removed alien offense, and 121 months' imprisonment for the methamphetamine distribution offense, to be served concurrently. ECF No. 77.

Nunez-Hernandez then appealed his sentence in both cases, ECF No. 79, though he voluntarily dismissed the appeal of his sentence for distribution of methamphetamine, *see* No. 20-cr-123, ECF No. 94. Nunez-Hernandez argued for the first time on appeal that 8 U.S.C. § 1326 violates his equal protection rights. Ultimately, on August 8, 2022, the Eighth Circuit rejected Nunez-Hernandez's arguments, and affirmed this Court's judgment. *United States v. Nunez-Hernandez*, 43 F.4th 857 (8th Cir. 2022). In January 2023, Nunez-Hernandez moved for compassionate release, but his motion was denied. No. 20-cr-123, ECF Nos. 96, 97.

II

Nunez-Hernandez now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 based on claims that he received ineffective assistance of counsel, or, in the alternative, to be granted an evidentiary hearing. ECF No. 100; No. 20-cr-123, ECF No. 98. Federal prisoners may collaterally attack their convictions or sentences

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a).  To prevail on a claim for ineffective assistance of counsel, Nunez-Hernandez must establish that his counsel's performance was deficient, as it "fell below an objective standard of reasonableness," and that this deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 678–88 (1984).  To satisfy this test, Nunez-Hernandez "must show that his 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006).  Review of counsel's performance is "highly deferential," with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 446 U.S. at 689.  "To overcome that presumption, [Nunez-Hernandez] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . , a reasonable probability meaning a probability sufficient to undermine confidence in the outcome."  *Rice*, 449 F.3d at 897 (cleaned up).

Nunez-Hernandez advances two theories as to why his counsel's assistance was ineffective.  First, Nunez-Hernandez argues that his counsel erred by failing to challenge the constitutionality of the illegal reentry statute.  ECF No. 100-1 at 7.  Nunez-Hernandez contends that his counsel "failed to raise any issue regarding the constitutionality of 8 U.S.C. Section 1326 or issue regarding equal protection."  *Id.* at 8.

"The failure to raise a defense can constitute ineffective assistance of counsel." *United States v. Seng Xiong*, No. 16-cr-167 (SRN/HB), 2020 WL 733407, at *13 (D. Minn. Feb. 13, 2020) (citing *United States v. Coutentos*, 651 F.3d 809, 818 (8th Cir. 2011). Still, "[t]he law does not require counsel to raise every available nonfrivolous defense." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009). Moreover, counsel's performance must be evaluated at the time of representation, rather than "with the acuity made possible by hindsight." *Simmons v. Iowa*, 28 F.3d 1478, 1481 (8th Cir. 1994).

In *Anderson v. United States*, the Eighth Circuit concluded that although, with hindsight, an argument on appeal that subsequent caselaw had invalidated a defendant's previous guilty plea "may have had merit, it was a wholly novel claim at the time" of the representation. 393 F.3d 749, 754 (8th Cir. 2005). The court declined to hold that counsel's performance was constitutionally deficient because (1) the Constitution "does not insure that defense counsel will recognize and raise every conceivable constitutional claim," and (2) even if counsel had thought of the argument, but made the strategic decision not to assert it, that decision would not render the performance ineffective. *Id.* ("The question here is not whether counsel's choice to omit an argument on appeal was an intelligent or effective decision, but rather whether his decision was an unreasonable one which only an incompetent attorney would adopt.") (cleaned up).

The lone legal basis for Nunez-Hernandez's challenge is *United States v. Carillo-Lopez*, a decision published on August 18, 2021—after Nunez-Hernandez had already been sentenced—in which a Mexican citizen successfully moved to dismiss his indictment on the ground that § 1326 violates the equal protection guarantee of the Fifth Amendment and

5

is therefore facially invalid. 555 F. Supp. 3d 996 (D. Nev. 2021). When addressing Nunez-Hernandez's § 1326 argument on appeal, the Eighth Circuit noted that "the overwhelming weight of authority goes the other way," and Nunez-Hernandez had only "one district court case on his side." ECF No. 98 at 5–6 (citing *Carillo-Lopez*, 555 F. Supp. 3d at 1001). Not only is Nunez-Hernandez improperly evaluating his counsel's performance with the benefit of hindsight, but he can no longer point to *any* legal authority in support of his argument. On May 22, 2023, the Ninth Circuit reversed and remanded the *Carillo-Lopez* decision. *United States v. Carrillo-Lopez*, 555 F. Supp. 3d 996 (D. Nev. 2021), *rev'd and remanded*, 68 F.4th 1133 (9th Cir. 2023). The Ninth Circuit explained,

> We hold that the district court clearly erred in its finding that Congress's enactment of § 1326 was motivated in part by the purpose of discriminating against Mexicans or other Central and South Americans. The strong "presumption of good faith" on the part of the 1952 Congress is central to our analysis. Rather than applying this presumption, the district court construed evidence in a light unfavorable to Congress, including finding that evidence unrelated to § 1326 indicated that Congress enacted § 1326 due to discriminatory animus against Mexicans and other Central and South Americans. The district court also erred in finding that Congress's failure "to repudiate the racial animus clearly present in 1929" was indicative of Congress's discriminatory motive in enacting the INA.

*Carrillo-Lopez*, 68 F.4th at 1153–54 (citations omitted). Thus, not only did Nunez-Hernandez's argument lack any support at the time of the representation, but it also lacks any now—even with the benefit of hindsight. In contrast, there is a wealth of authority rejecting Nunez-Hernandez's equal protection theory. *See Nunez-Hernandez*, 43 F.4th at 861 n.4 (collecting cases).

Given the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and Nunez-Hernandez's failure to rebut that presumption with any contrary legal authority, the only reasonable answer is to find that his counsel's pretrial motion strategy—which consisted of several pretrial motions, but which did not include a challenge to the constitutionality of § 1326—"was well within the range of professionally reasonable judgments." *See Strickland*, 466 U.S. at 689, 699. Accordingly, Nunez-Hernandez's argument fails.

Second, Nunez-Hernandez argues that his counsel failed to explain that he was charged with and pleading guilty to illegal reentry. ECF No. 100-1 at 10. In an attached declaration, Nunez-Hernandez asserts that he only became aware that he had been charged with illegal reentry when his appellate counsel sent him a copy of the appellate brief in Spanish. ECF No. 100-2. Nunez-Hernandez also maintains that he does not speak or read English. *Id.* In his Reply brief, Nunez-Hernandez expands on this theory, arguing that he did not actually plead guilty to illegal reentry. No. 20-cr-123, ECF No. 103.

The record squarely contradicts Nunez-Hernandez's assertions. The relevant facts are best addressed in chronological order. (1) A Spanish-language interpreter was present at Nunez-Hernandez's initial appearance on May 6, 2020, regarding his reentry of a removed alien charge in Case No. 20-cr-95. ECF No. 4. This hearing occurred before the other charges were brought against him on June 25, 2020. *See* No. 20-cr-123, ECF No. 1. (2) A Spanish-language interpreter was present at Nunez-Hernandez's arraignment for both cases on July 2, 2020. No. 20-cr-123, ECF Nos. 7, 8. (3) Once again, a Spanish-language interpreter was present at the January 5, 2021 change of plea hearing. ECF No. 58; No.

7

20-cr-123, ECF No. 56. (4) At that change of plea hearing, Nunez-Hernandez stated that he had read a Spanish translation of both indictments. ECF No. 93 at 12. He then stated that his counsel had explained the charges made against him in those indictments and answered all of his questions about the charges. *Id.* (5) The Court then reviewed the charges with Nunez-Hernandez. The relevant portion of the transcript reads:

> **[The Court]:** All right. The next thing the law requires me to do, Mr. Nunez-Hernandez, is review with you the nature of the charges and the penalties that you're facing here. I'm going to do this one case at a time, so let's talk first about the Criminal File 20-95. This is the reentry of a removed alien charge, okay?
>
> **[Nunez-Hernandez]:** Yes.
>
> **[The Court]:** All right. In that case you've been charged with the following:
>
> Count 1 of the indictment charges you with reentry of a removed alien in violation of Sections 1326(a) and 1326(b)(1) of Title 8 of the United States Code, and Sections 202 and 557 of Title 6 of the United States Code.
>
> For you to be convicted of this charge, the Government would have to prove beyond a reasonable doubt that on or about March 3rd, 2020, in the State and District of Minnesota, being an alien previously removed from the United States on or about March 7th, 2011, subsequent to sustaining at least one felony conviction, you entered and were found in the United States without having obtained the consent of the Attorney General of the United States or his successor, the Secretary of Homeland Security, to reapply for admission into the United States. Mr. Nunez-Hernandez, do you understand that this is the charge against you in Case Number 20-95?
>
> **[Nunez-Hernandez]:** Yes.

*Id.* at 17–18. (6) Nunez-Hernandez stated that he read a Spanish-language translation of the plea agreement, and that his counsel had "gone through the plea agreement and

8

explained all of its terms to [him]." *Id.* at 21.  The plea agreement stated, "The defendant agrees to plead guilty to Count 1 of the Indictment, which charges him with reentering the United States as an illegal alien after previously being removed from the United States . . . in violation of 6 U.S.C. §§ 202 and 557 and 8 U.S.C. §§ 1326(a) and 1326(b)(1)." ECF No. 59 at 1.  (7) The Government then reviewed the plea agreement with Nunez-Hernandez.  The relevant portion of the transcript reads:

> **[The Government]:** All right.  So, paragraph 1 says that you're going to agree to plead guilty today to, first of all, the immigration charge in Criminal Number 20-095, and that's Count 1 of the indictment and the Court has already explained that charge.  Is that what you want to do?
>
> **[Nunez-Hernandez]:** Yes.
>
> **[The Government]:** The plea agreement also says that you're going to plead guilty to Count 1 of the drug offense in the case.  That's Criminal Number 20-123.  Understood?
>
> **[Nunez-Hernandez]:** Yes.

ECF No. 93 at 23–24.  (8) A factual basis for Nunez-Hernandez's pleas was then established.  The relevant portion of this transcript reads:

> **[The Government]:** Okay.  So we don't know exactly when you entered, you probably know better than we do, but do you admit that on or before March 3rd, 2020, you did come back into the United States?
>
> **[Nunez-Hernandez]:** Yes.
>
> **[The Government]:** And is it true that when you reentered the United States, you didn't have anyone's approval?  In other words, you didn't have the Attorney General of the United States saying you could do it, or you didn't have the Secretary of Homeland Security saying you could do it?  No one gave you authority to enter the United States, is that right?

> [Nunez-Hernandez]: Yes.
>
> [The Government]: And is it true that prior to this last -- to your last deportation in 2011, the year 2011, you had by that time sustained a felony conviction for possession with the intent to distribute cocaine? Is that true?
>
> [Nunez-Hernandez]: Yes. . . .
>
> [The Government]: And is it also true that thereafter you voluntarily reentered the United States on or before March 3rd knowing that it was unlawful for you to do so?
>
> [Nunez-Hernandez]: Yes.
>
> [The Government]: By reason of this, then, are you admitting that you did in fact commit the offense charged in Count 1 of the immigration indictment in this case?
>
> [Nunez-Hernandez]: Yes.

*Id.* at 39–40. (9) Finally, Nunez-Hernandez's counsel clarified with him, before his plea, that he had no questions for him.

> [Counsel]: Okay. So did we go [over] everything ahead of time, Mr. Nunez-Hernandez?
>
> [Nunez-Hernandez]: Yes.
>
> [Counsel]: And you're satisfied with the representation?
>
> [Nunez-Hernandez]: Yes.
>
> [Counsel]: This hearing went pretty much exactly how we said it would when we discussed it ahead of time, correct?
>
> [Nunez-Hernandez]: Yes.

*Id.* at 44. Taken together, the record directly rebuts Nunez-Hernandez's claim that his counsel failed to explain that he was charged with and pleading guilty to reentry of a

10

removed alien. Accordingly, Nunez-Hernandez has failed to establish that his counsel's performance was deficient.

Nunez-Hernandez is correct that the transcript states that when asked how he pleaded to Count 1 of the indictment in Case No. 20-cr-95, which charged him with reentry of a removed alien, he replied, "No, guilty." *Id.* at 45. He argues that if the comma were removed from this statement, it would read "No guilty." No. 20-cr-123, ECF No. 103. This comma, he argues, casts doubt on whether he intended to plead guilty, and entitles him to, at minimum, an evidentiary hearing. *Id.* The entirety of the record establishes beyond doubt that Nunez-Hernandez intended to—and did—plead guilty to the reentry of a removed alien charge. Nunez-Hernandez's sworn statements repeatedly demonstrate that he understood his charges, and that he intended to plead guilty to them. And viewed against the entirety of the hearing transcript, Nunez-Hernandez's "No, guilty" response can only be understood as a denial of an intent to plead not guilty followed by a clear, unambiguous guilty plea. Had there been any question or ambiguity concerning Nunez-Hernandez's intent in real time, counsel or the undersigned would have inquired and resolved the ambiguity. As the transcript reflects, no participant—including Nunez-Hernandez—expressed any doubt regarding the fact that Nunez-Hernandez in fact pleaded guilty to reentry of a removed alien. His line of argument also begs further question, as it is unclear how Nunez-Hernandez can both (A) have not been aware that he had been charged with reentry of a removed alien until he was sent a copy of the appellate brief in Spanish—which necessarily would have been after his first appellant counsel was appointed on May 26, 2021, *see United States v. Nunez-Hernandez*, Appeal Nos. 21-1981, 21-1982 (8th Cir.

May 26, 2021), and (B) have decidedly pleaded "not guilty" to his reentry of a removed alien charge on January 5, 2021, as he now argues, *see* No. 20-cr-123, ECF No. 103.

Nunez-Hernandez's ineffective assistance of counsel arguments are unconvincing. His § 2255 petition, the briefs, and the record in this case conclusively show that he is not entitled to § 2255 relief. As a result, summary denial of his motion without an evidentiary hearing is appropriate. *See Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010).

District Courts possess authority to issue certificates of appealability for proceedings under § 2255. *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—. . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1). Moreover, "[a] certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing is "a showing that the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994). It is undebatable that Nunez-Hernandez's § 2255 motion is without merit, and he has raised no issues that warrant further proceedings. As such, he has not made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a certificate of appealability.

**ORDER**

Based on the foregoing, and all the files records, and proceedings herein, **IT IS ORDERED** that:

1. Defendant Salvador Nunez-Hernandez's Motion to Vacate under 28 U.S.C. § 2255 [File No. 20-cr-95, ECF No. 100; and File No. 20-cr-123, ECF No. 98] is **DENIED**.

2. No certificate of appealability shall issue.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date:  July 7, 2023                              s/ Eric C. Tostrud
                                                 Eric C. Tostrud
                                                 United States District Court